**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | No. 08-55838 |
| Plaintiff - Appellee, | D.C. No. CV06-849-GW(OPx) |
| v. | |
| BRIAN K. MacGREGOR, *et al.*, | MEMORANDUM[*] |
| Defendants - Appellants. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted December 9, 2009
Pasadena, California

Before: THOMPSON and SILVERMAN, Circuit Judges, and BOLTON,[**] District
Judge.

Appellants Brian K. MacGregor and Membership Services Direct, Inc.

("MSD") appeal the district court's orders granting summary judgment and

monetary and injunctive relief in favor of the Federal Trade Commission ("FTC")

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

on all of its claims under the FTC Act and the Telemarketing Sales Rule ("TSR"). We review the district court's grant of summary judgment de novo. *Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1119 (9th Cir. 2008). We review the district court's orders granting equitable relief for an abuse of discretion. *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## I.    Summary Judgment

The FTC asserted seven counts against Appellants under the FTC Act and the TSR. The FTC provided sufficient evidence to show that third party call centers acting in the names of MSD and other corporate shells in which MacGregor was involved ("the Companies") violated the FTC Act and the TSR. For their part, Appellants did not proffer any survey data or other evidence to counter the FTC's evidence. Instead, Appellants provided the affidavits of MacGregor and Daryl Dupree, the Operations Manager for one of the Companies, who averred that MacGregor and the Companies did not "knowingly and intentionally" violate the FTC Act and the TSR. Without any evidentiary support, both DuPree's and MacGregor's statements are conclusory and thus fail to create a genuine issue of material fact. *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

2

Appellants argue that they wrote procedures and scripts to assure the content of telemarketing calls, trained and monitored the third party call centers, and disciplined or terminated callers who did not comply with the procedures and scripts. However, the evidence Appellants provided in support of this argument does not demonstrate that the numerous violations of the FTC Act and the TSR did not occur. Because Appellants provided no affirmative evidence to counter the FTC's evidence, it is undisputed that third party call centers acting in the Companies' names violated the FTC Act and the TSR. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

Appellants further argue that, even if improper telemarketing calls were placed by the third party call centers, Appellants have created a genuine dispute as to whether they are liable for those calls because they never placed or authorized the calls themselves. The TSR states that "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer" to engage in certain abusive conduct. 16 C.F.R. § 310.3(a) (emphasis added). A "seller" is defined as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(z) (emphasis

3

added).

The parties do not dispute that MacGregor and the Companies entered into contracts with third party call centers to place telemarketing calls on behalf of the Companies. By entering into these contracts and maintaining control over the product, scripts and quality assurance, Appellants fit the TSR's description of a "seller" as one who "arranges for others to provide" a product. *See Stefanchik*, 559 F.3d at 930. Appellants fail to create a genuine dispute as to whether they are "sellers" under the TSR, and they are thus subject to its prohibitions. *See id.*

In *Stefanchik*, we stated that, "[u]nder the FTC Act, a principal is liable for the misrepresentations of his agent acting within the scope of the agent's actual or apparent authority." *Id.* (citing *Southwest Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1438 (9th Cir. 1986)). With the contractual authority to sell products in the name of the Companies following the Companies' processes and scripts, the third party call centers had the apparent authority to engage in the acts that were improper under the FTC Act and the TSR. *See id.* at 930-31. No genuine issue exists regarding Appellants' liability for the acts of the third party call centers.

Appellants next argue that, even if the FTC's data are correct regarding consumer reports of abusive conduct, the data are insufficient to show a "practice" of engaging in abusive conduct. However, among other data, the FTC provided

4

evidence showing Appellants' high rates of return, decline, and consumer complaint, all of which is probative of widespread material misrepresentation and other abusive conduct. Appellants again failed to produce affirmative evidence to counter the FTC's evidence, pointing only to their scripts and written quality assurance processes. The Court finds that no genuine issue remains regarding the widespread nature of Appellants' abusive conduct under the FTC Act and the TSR.

Finally, Appellants argue that MacGregor should not be liable for monetary restitution damages as an individual for the acts of the Companies under the FTC Act. This Court has held that

> [a]n individual is personally liable for a corporation's [FTC Act] violations if he "participated directly in the acts or practices or had authority to control them" and "had actual knowledge of material misrepresentations, was recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth."

*FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1202 (9th Cir. 2006) (quoting *Publ'g Clearing House*, 104 F.3d at 1170-71); *see also FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573-74 (7th Cir. 1989).

The FTC provided evidence that MacGregor participated in the operations of the Companies by writing call center scripts, designing websites, and overseeing finances, among other things. Appellants did not counter the FTC's evidence with anything but conclusory language from MacGregor. The FTC's evidence that

5

MacGregor participated directly in the practices of the Companies is thus undisputed.

With regard to MacGregor's mental state, the FTC provided evidence showing the high volume of consumer complaints, the high refund and return rates, and the number of investigations by state Attorneys General and the Better Business Bureau. The FTC's evidence is undisputed and sufficient to show that MacGregor likely knew of material misrepresentations made by the Companies to consumers, or was at least recklessly indifferent to the truth. *See Cyberspace.com*, 453 F.3d at 1202; *Publ'g Clearing House*, 104 F.3d at 1171. No genuine dispute therefore exists regarding MacGregor's individual liability for the acts of the Companies under the FTC Act.

In sum, the Court concludes that the FTC is entitled to summary judgment on all of its claims against Appellants MSD and Brian MacGregor as an individual.

## II. Monetary and Injunctive Relief

Appellants contend that the district court abused its discretion in calculating the monetary damages because the accounting data used for the calculations were unreliable and the FTC did not meet its burden to show that the calculations were reasonable approximations of consumer losses. The Court finds no merit in either argument. The district court did not abuse its discretion in determining the amount

of monetary damages.

Appellants also assert that the district court abused its discretion by imposing injunctions that are unconstitutionally overbroad. An injunctive remedy for a violation of the FTC Act is constitutional if it is "reasonably necessary to the prevention of future violations and does not impinge upon constitutionally protected commercial speech." *Litton Indus., Inc. v. FTC*, 676 F.2d 364, 373 (9th Cir. 1982) (quotation omitted). Regulation of commercial speech is permissible "if the government's interest in regulation is substantial and if the regulation directly advances that interest and is not more extensive than necessary." *Id.* Because the injunctions imposed by the district court are reasonably related to Appellants' past unlawful conduct, advance the government's substantial interest in protecting consumers from fraud, and are not more extensive than necessary, the Court finds that the district court's injunctive orders are constitutionally permissible. *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 394-95 (1965).

In sum, the Court finds that the district court did not abuse its discretion in its grant of monetary and injunctive relief against Appellants.

**AFFIRMED.**